Carolyn Shields
Liu & Shields LLP
41-60 Main Street, Suite 208A
Flushing, NY 11355
Tel:   718-463-1868
Email: shieldscj524@gmail.com
Attorneys for New Hudson Family
Restaurant Inc. d/b/a Hudson
Buffet and Suzhen Ni, Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Eleazar Marcial, on behalf of himself and all other persons similarly situated, | Case No.:7:18-cv-00663-NSR |
| Plaintiff, | MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS |
| – against – | |
| NEW HUDSON FAMILY RESTAURANT INC. d/b/a HUDSON BUFFET; SUZHEN NI; and John Does #1-10, | |
| Defendants. | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### I.  PROCEDURAL BACKGROUND

Plaintiff filed his Second Amended Complaint on July 18, 2018. Defendants accepted service of the summons and Second Amended Complaint on August 1, 2018 and filed and served a letter motion on August 10, 2018 (ECF #40, 41) requesting a pre-motion conference on Defendants' prospective motion to dismiss Count I of the Second Amended Complaint. The Court granted Defendants' motion for a pre-motion conference (ECF #46) and held the conference on September 21, 2018. Plaintiff has withdrawn Count II of the Second Amended Complaint, the

1

claim under New York state law for failure to pay the minimum wage (ECF #42 and minute entry for September 21, 2018 conference). The Court granted leave to Defendants to file its proposed motion to dismiss. This is that motion.

## II. MOTION TO DISMISS UNDER RULE 12(b)(1): THE ALLEGATIONS

**A.  Assumptions for purposes of Defendants' motion based on allegations of the complaint.**

Defendants challenge jurisdiction over Count I both facially and factually. Facially, Defendants assume for purposes of this motion the truth of the allegations of the Second Amended Complaint that plaintiff was paid $2000 per month (Second Amended Complaint, para. 31, Exhibit A to the Shields Affirmation); that plaintiff worked 76.5 hours per week (Second Amended Complaint, para. 29, *id.*). Defendants also assume for purposes of this motion that plaintiff's calculations that $2000 in wages per month amounts to $24,000 in wages per year and, dividing by 52 weeks, is $461.53 per week. Factually, Defendants invoke extrinsic evidence to show that plaintiff's weekly wages included a non-cash amount for lodging.

On the merits, Defendants will dispute plaintiff's figures because they do not include meals and food provided to plaintiff by Hudson Buffet, and do not include the value of transportation to and from the workplace and the apartment provided by Hudson Buffet. The foregoing will increase plaintiff's weekly compensation and plaintiff's hourly wage.

The Second Amended Complaint alleges that the plaintiff worked for Hudson Buffet from May 2016 through July 2017 (para. 24); that he worked 76.5 hours, more than 40 hours, per week (para. 29); and that he was paid $2000 per month

(para. 31), which is $461.53 per week. For purposes of this motion, Defendants accept these figures as true. Defendants have rounded in ways that favor the plaintiff. The parties are in agreement that the applicable minimum wage under the federal Fair Labor Standards Act ("FLSA") is $7.25. 29 U.S.C. § 206(a)(1)(C). (The plaintiff has withdrawn Count II, his claim for payment of the minimum wage under state law, under which the minimum wage for 2016 would have been $9.00, and for 2017 would have been $9.70. https://labor.ny.gov/minimum-wage-lookup/). The parties agree that plaintiff worked more than 40 hours per week and that there was no hourly rate agreed upon by plaintiff and Hudson Buffet. Thus, it is undisputed that payment of the federal minimum wage at all times relevant to the Second Amended Complaint required payment of $290 per week ($7.25 times 40 hours), and that the employer paid more than that ($461.53).

**B.     Hudson Buffet's cost of lodging provided to plaintiff should be added to plaintiff's wages**

29 U.S.C. § 203 provides: "'Wage' paid to any employee includes the reasonable cost, as determined by the Administrator [Secretary], to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees . . . ."  The Administrator/Secretary has so provided in 29 CFR § 531.3(c): "[T]he reasonable cost to the employer of furnishing the employee with board, lodging, or other facilities (including housing) is the cost of operation and maintenance . . . ."

3

Paragraph 24 of the Second Amended Complaint alleges that "Mr. Marcial was employed at Hudson Buffet from approximately May 2016 through July 2017." It is undisputed that Hudson Buffet provided an apartment for plaintiff to live in, shared by 2 other employees of Hudson Buffet (transcript of plaintiff's deposition testimony, Shields Affirmation, Exhibit B), and that Hudson Buffet paid the utilities for that apartment. The monthly rent was $1100, the annual rent was $12,000, the weekly rent for 1 person was 84.61. (Shields Affirmation, Exhibit C.) The annual utilities paid by Hudson Buffet were at least $1431.62 (Shields Affirmation, Exhibit D), the weekly utilities for 1 person were at least $9.18. Thus, the cost to the employer of providing lodging to the plaintiff was at least $93.79 per week. The non-cash value of the lodging ($93.79), added to plaintiff's cash wages ($461.53), results in a total weekly wage of $555.32, a figure used in Defendants' alternative factual challenge to jurisdiction.

Hudson Buffet in addition provided three meals each day to plaintiff and provided food provided to plaintiff on his days off. However, this motion does not incorporate meal credits as part of plaintiff's wages because plaintiff disputes that the restaurant provided meals and food to him.

Even using plaintiff's mistaken method of determining the minimum wage, see following section, dividing weekly wages ($555.32) by hours worked per week (76.5) results in an average weekly wage of $7.26, which exceeds the minimum wage. And "if an employee's average wage exceeds the minimum, then no minimum

4

wage violation has occurred." *Wolman v. Catholic Health Sys. of Long Island*, 2010 U.S. Dist. LEXIS 137392, at *15 (E.D.N.Y. 2010).

If the Fluctuating Wage method of 29 CFR § 778.114 applied, plaintiff was paid the required minimum wage.

## C. Plaintiff's method of determining the minimum wage

Plaintiff, as shown by his opposition to Defendants' letter motion on the minimum wage issue (ECF #42), would determine the minimum wage by dividing the weekly wage ($461.53) by the total number of hours worked per week (76.5), including overtime hours. This is contrary to Supreme Court precedent and is contrary to common sense because it would result, in every case, in zero wages being paid for overtime hours. That is, if the regular hourly rate is the quotient of total weekly wages and total hours worked per week including overtime hours, the result necessarily is an hourly rate for all hours worked a week, including overtime hours, leaving no wages to allocate to overtime pay. That is, dividing by 76.5 results in an average hourly wage that is the same for each of the 76.5 hours of work, meaning that there is never any overtime compensation paid. Under plaintiff's method, an employer who hypothetically pays ten times the minimum wage would still never pay any overtime because the total compensation is allocated to the minimum wage, leaving nothing as a premium for overtime hours. This latter, excessively generous, hypothetical can be seen by assuming an 80 hour work week and weekly wages of $8000. Using plaintiff's method in this hypothetical, dividing the weekly wages of $8000 by 80 hours results in an hourly rate of $100 an hour. At

5

$100 an hour, $4000 ($100 hourly rate times 40 hours) is allocated to 40 hours of the 80 weekly hours and the balance of the weekly wages, $4000 ($8000 less $4000, or 40 hours times $100 hourly rate) leaves zero wages to allocate to overtime. No matter how high the salary, plaintiff's method always results in no overtime wages paid.

Plaintiff's method cannot be right, and the Supreme Court of the United States and the Second Circuit Court of Appeals have held it is not right. The regular hourly rate must be determined without regard to overtime hours: "The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424-25 (1945).

> We think the most reasonable conclusion is that Congress intended the regular rate of pay to be found by dividing the weekly compensation by the hours worked <u>unless the compensation paid to the employee contains some amount that represents an overtime premium</u>. <u>If such overtime premium is included in the weekly pay check that must be deducted before the division</u>. This deduction of overtime premium from the pay for the workweek results from the language of the statute. When the statute says that the employee shall receive for his excess hours one and one-half times the regular rate at which he is employed, it is clear to us that Congress intended to exclude overtime premium payments from the computation of the regular rate of pay. To permit overtime premium to enter into the computation of the regular rate would be to allow overtime premium on overtime premium -- a pyramiding that Congress could not have intended. In order to avoid a similar double payment, we think that any overtime premium paid, even if for work during the first forty hours of the workweek, may be credited against any obligation to pay statutory excess compensation. These conclusions accord with those of the Administrator.
>
> . . . Accordingly, statutory excess compensation paid for work in excess of forty hours should not be used to figure the regular rate.

*Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464-65 (1948) (emphasis added).

**D.     The minimum wage is determined independently of the overtime wage and is the product of 40 hours times the statutory minimum rate**

The "regular rate" on which overtime compensation is calculated is not the same as the minimum wage rate, which is provided by statute. The minimum wage rate is the statutory minimum rate required by 29 U.S.C. § 206(a) and is not the "agreed hourly rate", not the "regular rate", and not the "average rate":

> The particular wording of § 207(a) [overtime rate], which is the basis of the overtime cases, is not found in § 206(a) [minimum wage rate], which simply requires minimum wage payments "at the following rates - (1) not less than $1 an hour; . . ."
>
> The existence of different rules regarding reallocation under § 206(a) and § 207(a) is an understandable result of the different functions of those two sections. The former is directed at providing a minimum living standard, and can be satisfied so long as the weekly wage is sufficient to provide that minimum. Section 207(a), on the other hand, is concerned also with deterring long hours by making such long hours more expensive for the employer. This purpose can be successfully accomplished only if the base for computing "time and a half" is the regular, rather than the minimum, wage. Otherwise an employer whose regular rate was one and one-half times the minimum would face no incentive to avoid overtime.

*United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 494 (2d Cir. 1961). It is recognized that this Second Circuit case means that the minimum rate is determined simply by the rate in the statute, section 206(a), in distinction to the "regular rate" on which overtime is based: "[T]he Second Circuit made clear that while <u>the agreed rate of pay could be disregarded for purposes of determining whether a section 6(a) [206(a)] minimum wage violation had occurred</u>, for purposes of section 7(a) overtime hours must be compensated at one and one-half times the regular, agreed rate rather than the minimum wage rate." *Donovan v. Kaszycki & Sons Contrs., Inc.*, 599 F. Supp. 860, 869 (S.D.N.Y. 1984) (emphasis added). *See*

7

*also Marshall v. Sam Dell's Dodge Corp.*, 451 F. Supp. 294, 303 (N.D.N.Y. 1978) ("Regardless of the total pay received by an employee, the Act requires that each employee receive, each week, an amount equal to the minimum wage times the number of hours").

This motion does not involve the calculation of the overtime rate and therefore does not involve the regular rate on which overtime compensation is based. This motion involves the calculation of the minimum wage rate, which, as the Second Circuit held, is simply based on the rate provided by the statute. Here that rate is $7.25 per hour.

E.  **Alternative method of dividing total weekly wages by 40 to obtain the minimum wage**

An alternative method of determining the minimum wage paid is to divide the total weekly wages by 40:

> Where an employee receives a weekly salary, the regular rate of pay is calculated by dividing the weekly salary by forty. 29 C.F.R. § 778.109; 29 U.S.C. § 207(e); *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (rebuttable presumption that weekly pay represents the first 40 hours worked and does not include overtime); 12 N.Y.C.R.R. § 146-3.5 (applying same calculation method under NYLL).

*Bustamente v. Uno Café & Billiards Inc.*, 2018 U.S. Dist. LEXIS 86898, at *7 (E.D.N.Y. 2018).

> "There is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's workweek; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." *Jiao,* No. 03 Civ. 165, 2007 U.S. Dist. LEXIS 96480, 2007 WL 4944767, at *13 (E.D.N.Y. Mar. 30, 2007) (citing *Giles*, 41 F. Supp. 2d at 317). Courts have made clear that "[u]nless the contracting parties intend and understand the weekly

8

salary to include overtime hours at the premium rate, courts do not deem weekly salaries to include the overtime premium for workers regularly logging overtime, but instead hold that weekly salary covers only the first 40 hours."

*Berrios v Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012), *quoting Giles v. City of N.Y.*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999).

If this method were used, and based on the allegations of the complaint, plaintiff would have been paid a minimum wage of $11.53 an hour. If the non-cash value of the apartment provided to plaintiff were added to his cash wages, his minimum wage under this method would have been $13.88. Both of these amounts exceed the federal minimum wage, resulting in plaintiff's lack of standing to assert Count I and Count I's failure to state a claim.

The difficulty with this method is that calculating overtime wages at 1.5 times the minimum wage derived by this method would result in an overtime wage that counts $11.53 (or $13.88) twice. Therefore the simple method of comparing the statutory minimum wage (40 times $7.25) with the wages actually paid is the better method.

### III.  MOTION TO DISMISS COUNT I OF THE COMPLAINT UNDER RULE 12(b)(1): THE LAW

Defendants move to dismiss Count I under Rule 12(b)(1) for lack of standing and therefore lack of Article III jurisdiction over the federal minimum wage claim.

### A.  The Law

A standing challenge is a challenge to Article III jurisdiction:

> Standing is a federal jurisdictional question "determining the power of the court to entertain the suit." . . . "[A] plaintiff must demonstrate standing

9

> for each claim and form of relief sought." . . . . At issue in this case is Article III standing, for which a plaintiff must show [1] that he "suffered an injury-in-fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical"; [2] that there was a "causal connection between the injury and the conduct complained of"; and [3] that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) . . . . "[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561.

*Carver v. City of NY*, 621 F.3d 221, 225 (2d Cir. 2010).

Defendants' challenge to jurisdiction over the minimum wage claim (Count I) is alternatively facial (using wages of $463.53) and factual (using wages of $555.32, including the non-cash value of lodging). In a factual attack on jurisdiction, the presumption of truthfulness afforded to a plaintiff under Fed. R. Civ. P. 12(b)(6) does not attach." *Delgado v. Collecto, Inc.*, 2013 U.S. Dist. LEXIS 171607, at *3-4 (M.D. Fla. 2013).

Standing is properly determined at the pleading stage: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. . . . Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, ___U.S.___ , ___, 136 S. Ct. 1540, 1547 (2016). *See also ACLU of New Mexico v. Santillanes*, 546 F.3d 1313, 1319 (10th Cir. 2008); *Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006) ("Article III standing . . . should be determined before reaching

10

the merits"); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998) (invoking the rule that "Article III jurisdiction is always an antecedent question").

A "class action allegation adds nothing to the standing inquiry since the named plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Carver v. City of NY*, 621 F.3d 221, 228, n6 (2d Cir. 2010). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 493-95 (1974). See also *W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106, n5 (2d Cir. 2008) ("[*named*] plaintiffs in a class action 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent. Unless [they] can thus demonstrate the requisite case or controversy between themselves personally and [defendants], 'none may seek relief on behalf of himself or any other member of the class'").

"Where a complaint does not allege facts showing that the plaintiff failed to receive the minimum wage—that is, that plaintiff was actually injured—the plaintiff [does] not have standing to raise [his] claims on behalf of hourly employees." *Nakahata v. NY-Presbyterian Healthcare Sys.*, 2012 U.S. Dist. LEXIS 127824, at *22 (S.D.N.Y. 2012).

"Because the defendants' challenge is to subject matter jurisdiction, we may consider materials extrinsic to the complaint." *Phifer v. City of NY*, 289 F.3d 49, 55 (2d Cir. 2002). Here, those extrinsic materials are offered on the alternative ground that the minimum wage includes a non-cash amount for lodging.

### B. Plaintiff lacks standing to assert a federal minimum wage claim

Part II shows that plaintiff lacks standing to assert Count I, the federal minimum wage claim. Plaintiff has no standing to assert the minimum wage claim because the wages he admits he were paid satisfy the minimum wage requirement.

Because the Second Amended Complaint admits that the plaintiff was paid at least the minimum wage, plaintiff suffered no injury-in-fact and does not have standing to assert Count I.

### IV. COUNT I SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The Court not only lacks subject matter jurisdiction over the minimum wage count, that count also fails to state a claim upon which relief can be granted. For the reasons discussed in part II above, Count I fails to state a claim for failure to pay the minimum wage.

### CONCLUSION

Defendants ask the Court to dismiss Count I of the Second Amended Complaint under Rule 12(b)(1) for plaintiff's lack of standing and accordingly for lack of subject matter jurisdiction over that claim; or to dismiss Count I of the Second Amended Complaint under Rule 12(b)(6) for failure to state a claim.

13

Dated:  November 5, 2018    Respectfully submitted,

*s/ Carolyn Shields*

Carolyn Shields
Liu & Shields LLP
41-60 Main Street, Suite 208A
Flushing, NY 11355
Tel:    718-463-1868
Email: shieldscj524@gmail.com
Attorney for the Defendants