UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELEAZAR MARCIAL
on behalf of himself and all other
persons similarly situated,

                       Plaintiffs,

   -against-

NEW HUDSON FAMILY RESTAURANT INC.,
SUZHEN NI, and JOHN DOES # 1 – 10,

                       Defendants.

4/29/19

7:18-cv-0663(NSR)(JCM)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Eleazar Marcial brings this action, on behalf of himself and others similarly situated, against Defendants through the Second Amended Complaint. ("Second Am. Compl.," ECF No. 31.) Plaintiff lists six counts in the Second Amended Complaint: (1) violation of the minimum wage provision of the Fair Labor Standards Act ("FLSA"); (2) violation of the minimum wage provision of New York Labor Law;[1] (3) violation of the overtime provision of the FLSA; (4) violation of the overtime provision of New York Labor Law; (5) violation of the spread of hours provision of New York Labor Law; and (6) violation of New York's Wage Theft Prevention Act. Presently before the Court is Defendants' motion to dismiss count one of the Second Amended Complaint pursuant to Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6). (ECF No. 59.) Also pending is Plaintiff's motion for conditional certification under the FLSA for Plaintiff's FLSA claims. (ECF No. 55.) For the following reasons, Defendant's

---

[1] The Court notes that Plaintiff indicated he would withdraw this count during a conference before this Court on September 21, 2019. However, as of the date of this Opinion, Plaintiff has not provided the Court with a stipulation of voluntary dismissal.

1

motion to dismiss count one is GRANTED and Plaintiff's motion for certification is GRANTED in part an DENIED in part.

## BACKGROUND

The following facts are derived from the Second Amended Complaint and are assumed to be true for the purposes of this motion.

Plaintiff worked at Hudson Buffet, a restaurant owned and operated by Defendants, as a food preparer from approximately May 2016 through July 2017. (Second Am. Compl. ¶¶ 23 – 25.) Plaintiff regularly worked three twelve and a half hour shifts and three thirteen hour shifts per week, approximately seventy-six and a half hours and six days of work per week in total. (*Id.* ¶¶ 28 – 29.)

There was no timeclock or sign in sheet at Defendants' premises and Plaintiff was not paid on an hourly basis. (*Id.* ¶ 30.) Rather, Plaintiff was paid $1,000 twice each month, $2,000 total per month, regardless of how many hours he worked. (*Id.* ¶¶ 31 – 32.) As a result, Plaintiff alleges that he was paid less than federal and state regulatory minimum wages and that Defendants' failure to pay Plaintiff minimum wage was willful. (*Id.* ¶¶ 33 – 34.) Defendants also willfully failed to pay Plaintiff overtime payment for the overtime hours he worked or for the additional hour he worked on his six shifts per week each exceeding ten hours. (*Id.* ¶¶ 36 – 38.) Additionally, Defendants did not provide Plaintiff with a written notice required under the Wage Theft Prevention Act. (*Id.* ¶ 39.) Before and throughout the period of Plaintiff's employment and continuing through present day, Defendants employed other individuals in positions similar to Plaintiff's ("collective action members") and applied the same illegal policies and practices to those employees. (*Id.* ¶¶ 41 – 42.) Plaintiff alleges that the collective action members have worked over forty hours per week but that Defendants failed to provide them with

minimum wage, overtime compensation, or spread of hours pay. (*Id.* ¶¶ 44 – 45, 52.) Defendants also violated the frequency of pay requirements under New York Labor Law in their payment of Plaintiff and the collective action members and, Defendants did neither maintained accurate records nor provided those employees with the required wage notices. (*Id.* ¶¶ 46 – 49.)

## LEGAL STANDARD

### I. Standard for dismissal under Rule 12(b)(1) for lack of standing

Rule 12(b)(1) allows parties to challenge a federal court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When a court lacks subject matter jurisdiction, it has no power to adjudicate the merits of the case and, accordingly, must decide a Rule 12(b)(1) motion before any motion on the merits. *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 55 (2d Cir. 2016); *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison*, 547 F.3d at 170 (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).

Lack of standing may be grounds for dismissal under Rule 12(b)(1). *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 560 (S.D.N.Y. 2016). Standing challenges pursuant to 12(b)(1) can be facial or factual. *Carter*, 822 F.3d at 56; *DaCorta v. AM Retail Grp., Inc.*, No. 16-CV-1748(NSR), 2018 WL 557909, at *3 (S.D.N.Y. Jan. 23, 2018). A facial challenge

3

considers the sufficiency of the allegations in the complaint to support standing. *Carter*, 822 F. 3d at 56. A factual challenge, on the other hand, questions the existence of standing. *Id.* at 57. In such circumstances, the Court may consider evidence outside the pleadings but should not consider any conclusory or hearsay statements included in the evidence. *Id.*; *TZ Manor, LLC v. Daines*, 815 F. Supp. 2d 726, 733 – 34 (S.D.N.Y. 2011). If the defendant's evidence is immaterial and does not contradict the plausible allegations of standing in the complaint, the plaintiff may rely on the allegations in the pleading. *Carter*, 822 F. 3d at 57. However, where a Defendant provides evidence that controverts material factual allegations of standing in the complaint, the Court must make a factual determination as to the standing related allegations. *Id.*; *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quoting *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999)).

## II.  Standard for dismissal under Rule 12(b)(6) for failure to state a plausible claim

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. In considering a 12(b)(6) motion, a court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A court also need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

4

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

### III.   Standard for conditional FLSA class certification

The FLSA allows plaintiffs to seek certification to proceed as a collective action, which would provide other "similarly situated" employees of defendants with the opportunity to join suits for FLSA violations. 29 U.S.C. § 216(b). Under the FLSA, potential class members must affirmatively "opt-in" to be covered by the litigation. § 256(b). "[D]istrict courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs.' " *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

To determine whether to certify a collective class action, courts in the Second Circuit employ a two-step analysis. *Id.* at 555. First, "the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) (citing *Myers*, 624 U.S. at 555). It is the Plaintiff's burden to make this "modest factual showing," but the burden is minimal. *See Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007). Second, the

5

district court determines whether the opt-in plaintiffs are similarly situated to the named plaintiffs so that the collective action may proceed. *Glatt*, 811 F. 3d at 540 (citing *Myers*, 624 U.S. at 555). At the conditional certification stage, before discovery is complete, the "evidentiary standard is lenient," *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008), and the Court does not decide issues on the merits or resolve factual disputes. *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010). At a later stage, after the district court has a fuller record, the court will determine whether the collective action may proceed by determining whether the plaintiffs who have opted in are actually similarly situated to the named plaintiff. *Myers*, 624 F.3d at 555.

## DISCUSSION

### I. Defendants' motion to dismiss count one

According to Defendants, the Court lacks subject matter jurisdiction to bring an FLSA minimum wage claim and therefore the federal minimum wage claim should be dismissed pursuant to Federal Rules of Civil Procedure Rule 12(b)(1). Specifically, Defendants allege that Plaintiff lacks standing because Plaintiff received payment exceeding the federal minimum wage. Facially, accepting as true the facts in the Second Amended Complaint, Plaintiff did not allege a violation of the FLSA's minimum wage requirement. This is because, according to Defendants, the federal minimum wage calculation should be for a forty-hour workweek. Defendants also make a fact-based standing argument, contending that Plaintiff received lodging as additional compensation to his salary.

The Court will consider whether Plaintiffs have standing to assert FLSA minimum wage claims before deciding whether to grant Plaintiff's motion for conditional certification because "it is black letter law that a rule of procedure cannot create standing." *Pub. Emps.' Ret. Sys. of*

*Miss. v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 480 (S.D.N.Y. 2010); *see also Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 333 (S.D.N.Y. 2012) ("It is also important not to collapse the standing inquiry into the class certification inquiry. Courts in this District have long made clear that 'the Article III standing determination should precede that of class certification.' " (quoting *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F.Supp.2d 579, 605 (S.D.N.Y.2006))). The provision of the FLSA which allows for collective action is a rule of procedure. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011).

## A. Standing[2]

To ensure that there is a case or controversy, the Supreme Court has held that parties before federal courts must have standing to bring their claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, (1992). A plaintiff has standing if she has suffered "(1) an injury that is (2) 'fairly traceable to a defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.' " *Id.* 560 – 61 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). For the purposes of standing, an injury must be an injury in fact, meaning "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or

---

[2] Plaintiff argues that Defendants are incorrectly asserting a merits-based claim as an issue of standing and subject matter jurisdiction. According to Plaintiff, Defendants "are actually arguing [ ] merely that [Plaintiff] failed to establish one of the elements of his cause of action." (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Pl.'s Minimum Wage Claims ("Pl.'s Opp'n") p. 4, ECF No. 54.) The Court disagrees. Defendants' argument is that Plaintiff cannot meet the injury prong of a standing analysis for a FLSA minimum wage claim because he was paid at least the federal statutory minimum wage. This is a valid argument that Plaintiff has no standing to assert such a claim. If Defendants did not violate the FLSA minimum wage provision, Plaintiff could not have suffered the injury he alleges in count one. *Compare Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010) (holding that the plaintiff sufficiently alleged standing because he adequately alleged that the defendants violated federal labor laws); *Indergit v. Rite Aid Corp.*, No. 08-CV-9361(PGG), 2009 WL 1269250, at *3 (S.D.N.Y. May 4, 2009); (holding that the plaintiff established that he was injured by the defendants' failure to comply with overtime compensation requirements), *with Ramos v. Telgian Corp.*, 176 F.Supp.3d 181, 201 n.32 (E.D.N.Y. 2016) (noting that the plaintiffs would not have standing because they could not show that they were deprived of compensation to which they were entitled, meaning they could not establish actual injury and therefore did not have standing).

7

imminent, not 'conjectural' or 'hypothetical.' " *Id.* at 560 (citations and quotation marks omitted).

The alleged injury under count one is that Defendants did not pay Plaintiff or the putative class members the minimum wage required under the FLSA.

### i. Facial challenge

Defendants contend that Plaintiff, even assuming the truth of the facts in the Second Amended Complaint, failed to state facially plausible allegations that he was paid below the minimum wage set in the FLSA.

"To determine whether an employee received adequate compensation under the FLSA, a court must determine the 'regular rate' of pay that the employee received, which has been defined as 'the hourly rate actually paid the employee for the normal, non-overtime work-week for which he is employed.' " *Jiao v. Shi Ya Chen*, No. 03-CV-0165(DF), 2007 WL 4944767, at *13 (S.D.N.Y. Mar. 30, 2007) (quoting *Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S. 419, 424 (1945)) (citing *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 338 (S.D.N.Y. 2005); *Moon v. Kwon*, 248 F. Supp. 2d 201, 230 (S.D.N.Y. 2002)). When employees are paid a salary, the regular rate is determined from the employee's weekly compensation. For salaried employees not paid on a weekly basis, the weekly compensation is found by calculating the yearly salary and dividing that amount by fifty-two then dividing that amount by the number of hours that amount was intended to compensate. 29 C.F.R. § 778.113(b); *see Jiao*, 2007 WL 4944767, at *13.

There is a rebuttable presumption that a weekly salary is compensation for the first forty hours of an employee's workweek, and the burden is on the employer to rebut this presumption with evidence that there was an agreement between the employer and the employee that the

weekly salary would cover more hours. *Jiao*, 2007 WL 4944767, at *13; *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999). The Supreme Court has held that the FLSA's overtime provisions are "remedial and humanitarian in purpose" and should be interpreted broadly. *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944), abrogated on other grounds; *see Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008) ("In service of the statute's remedial and humanitarian goals, the Supreme Court consistently has interpreted the Act liberally and afforded its protections exceptionally broad coverage."). Unless both sides clearly understood that time worked beyond forty hours a week would be included in the weekly salary, "a finding that a salary included overtime . . . would be the sort of 'narrow, grudging' FLSA application that the [Supreme] Court rejected soon after enactment." *Giles*, 41 F. Supp. 2d at 317.

The federal statutory minimum wage for the period during which Defendants employed Plaintiff, from May 2016 through July 2017, was $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). If Plaintiff's hourly wage, based on the facts asserted in the Second Amended Complaint, falls below this figure, Plaintiff has established that he has standing to bring a FLSA minimum wage claim.

Plaintiff alleges that he was paid a rate of $2000 per month for his work for Defendants, and that he routinely worked approximately seventy-six and a half hours per week. (Second Am. Compl. ¶¶ 29 & 31.) According to Plaintiff, his compensation was less than "the statutory federal and state minimum wages in effect at relevant times." (*Id.* ¶ 33.) However, Plaintiff does not allege in the Second Amended Complaint that the parties agreed that his salary would cover those hours worked beyond a forty-hour workweek.[3] Defendants, the party with the burden to

---

[3] Plaintiff stated that he received $2,000 per month regardless of the number of hours he worked, but this does not amount to an allegation that the parties agreed Plaintiff's salary would cover more than forty hours per

9

show that the weekly salary was intended to cover more than forty hours per week, agree that Plaintiff worked more than forty hours per week but do not attempt to rebut the presumption that the weekly salary was for Plaintiff's first forty hours of work each week.[4] (Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mot. to Dismiss") p. 3, ECF No. 60.) Considering this, and the broad interpretation to be applied to FLSA minimum wage and overtime issues, the Court will calculate Plaintiff's minimum wage assuming that his salary covered a forty-hour week. *See Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 387 (E.D.N.Y. 2012) (holding that the parties did not agree that the plaintiff's weekly wages would include overtime hours because there was no showing of actual understanding between both the employer and employee).[5]

---

week. (Second Am. Compl. ¶ 32.) Plaintiff's allegations, taken as true, do not meet his affirmative duty to establish that he has subject matter jurisdiction. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). The Court is not obligated to make inferences in Plaintiff's favor for the purposes of determining subject matter jurisdiction. *Id.*

[4] Plaintiff is correct that just because there is a rebuttable presumption that a salaried employee's weekly pay represents the first forty hours worked does not mean that the Court must calculate Plaintiff's regular rate by dividing his weekly salary by forty hours. (Pl.'s Opp'n p. 10.) However, there is nothing in Plaintiff's or Defendants' submissions to rebut this presumption and there is nothing in Plaintiff's Second Amended Complaint to otherwise indicate to the Court that the parties agreed that the weekly salary would cover more than forty hours per week. Therefore, the Court operates under the presumption that the salary was for a forty-hour workweek. *See Hernandez v. Jrpac Inc.*, No. 14-CV-4176(PAE), 2016 WL 3248493, at *32 (S.D.N.Y. June 9, 2016) ("Defendants have not rebutted that presumption here with respect to either Romero or Rosales. Because each was paid a fixed weekly salary, their regular rate of pay should be calculated by dividing those salaries by 40 hours." (citation omitted)). In *Quiroz v. Luigi's Dolceria, Inc.*, the court determined that the presumption was rebutted because the plaintiff testified that "when he was first hired he was told he would work from 8:00 a.m to 5:00 p.m, six days a week, for a total of 54 hours per week" and that he would be paid a base salary of $650. No. 14-CV-871(VVP), 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016). Unlike in *Quiroz*, there is no testimony from Plaintiff or any allegation in the Second Amended Complaint that Plaintiff was told he would be working more than forty hours per week when he was hired, let alone any other similar indication that the Parties agreed Plaintiff's weekly salary would cover work beyond the forty-hour workweek.

[5] Plaintiff argues that the following quotation from *Berrios* indicates that courts should divide the weekly salary by all hours worked in the week when determining minimum wage and then, after that calculation, add in the employee's premium pay for any overtime worked:

> "There is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." Courts have made clear that "[u]nless the contracting parties intend and understand the weekly salary to include overtime hours at the premium rate, courts do not

10

The minimum wage for the period in which Plaintiff worked for Defendants is established in FLSA—$7.25 per hour. This rate, multiplied by the first forty hours Plaintiff worked every week, amounts to $290 per week.[6] *See Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, No. 14-CV-7850(VEC)(DF), 2016 WL 8650464, at *14 (S.D.N.Y. Nov. 7, 2016) (noting that the minimum weekly pay a plaintiff was entitled to was $290 "($7.25/hour X 40 hours)" plus overtime pay calculated at an overtime rate); *Berrios*, 849 F. Supp. 2d at 386 – 87 (suggesting that the minimum wage should be calculated by dividing the weekly salary by the first forty hours the plaintiff worked each week because the defendants did not rebut the presumption that the weekly salary was only compensation for those forty hours); *see also Jiao v. Shi Ya Chen*, No. 03-CV-0165(DF), 2007 WL 4944767, at *16 (S.D.N.Y. Mar. 30, 2007). Based on the face of the Second Amended Complaint, Plaintiff was paid $1,000 twice per month, which amounts to a salary of $24,000 per year. That amount, divided by fifty-two for the fifty-two weeks in a year, is $461.54[7] per week or $11.54 per hour. Plaintiff was paid $ 461.54 per week, which is above the minimum weekly wage of $290 to which Plaintiff was entitled under the FLSA.

---

deem weekly salaries to include the overtime premium for workers regularly logging overtime, but instead hold that weekly salary covers only the first 40 hours."
*Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (citations omitted) (quoting *Jiao v. Shi Ya Chen*, No. 03-CV-0165(DF), 2007 WL 4944767 (S.D.N.Y. Mar. 30, 2007); *Giles v. City of New York*, 41 F. Supp. 2d 308 (S.D.N.Y. 1999)). The Court disagrees with Plaintiff's interpretation. If there is no indication that both parties understood that the weekly salary included overtime hours at a premium rate, the weekly salary only covers forty hours.

[6] According to Plaintiff, his weekly rate of pay for minimum wage purposes should be calculated by dividing his weekly pay by his total hours work each week, which amounts to $6.03 per hour. (Pl.'s Opp'n p. 8.) Because there is nothing in the Second Amended Complaint to indicate that the parties agreed that the salary would cover more than forty hours a week, and because Defendants do not rebut the presumption that the salary was intended to cover forty hours per week, the Court finds that this calculation is incorrect.

[7] The Parties round $461.538 down. The Court complies with rounding conventions, that numbers ending in one to four should be rounded down and numbers ending in five through nine should be rounded up, when rounding and therefore rounds $461.538 up. Rounding conventions are applied throughout this Opinion.

Because, based on the face of the Second Amended Complaint, there is no violation of the FLSA's minimum wage provision, Plaintiff has not alleged an injury for count one and therefore does not have standing for that claim. Count one must be dismissed under Federal Rules of Civil Procedure Rule 12(b)(1) for want of subject matter jurisdiction. *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 560 (S.D.N.Y. 2016) (granting the defendant's motion to dismiss one of the plaintiff's claims under Rule 12(b)(1) because the plaintiff did not have standing for that claim).

### ii. Factual challenge

Even if Defendants had not argued that Plaintiff failed to facially show that Plaintiff had standing to bring a FLSA minimum wage claim, the Court would still grant Defendants' Rule 12(b)(1) motion on the grounds that Plaintiff lacks factual standing.

Plaintiff alleges that he was paid a flat rate of $2000 per month for his work for Defendants which, based on the calculation in *supra* Part I(A)(i), is $461.54 per week.[8] However, Defendants present evidence that Plaintiff was also compensated with lodging.[9]

"Wage," as defined by the FLSA, includes "the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. § 203(m)(1). The Administrator has determined that the " 'reasonable cost' to the employer . . . is the cost of operation and maintenance including

---

[8] Plaintiff claims that any alleged additional compensation he received should not be considered because Plaintiff did not allege that he received lodging or utilities from Plaintiff in his Second Amended Complaint. (Pl.'s Opp'n p. 14.) However, as Defendants make a factual challenge to Plaintiff's standing for count one, the Court may consider evidence outside of the pleadings. *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).

[9] In addition, Defendants claim that they provided Plaintiff with three meals per day, including on his days off, but, because Plaintiff disputes that Defendants provided him with food, Defendants do not include meal credits in their minimum wage calculations. (Defs.' Mot. to Dismiss p. 4.)

adequate depreciation plus a reasonable allowance (not more than 5 1/2 percent) for interest on the depreciated amount of capital invested by the employer," but if the total is more than the fair rental value, the fair rental value is the reasonable cost. 29 C.F.R. § 531.3(c).

Based on Plaintiff's deposition testimony, Defendants provided him with an apartment, which he shared with two other employees, during his employment. (Decl. of Carolyn Shields in Supp. of Defs.' Mot. to Dismiss ("Shields Decl.") ¶ 3, Ex. B ("Pl.'s Tr.") Pl.'s Tr. 15:9 – 14, 21 – 25; 16:2 – 25; 17:2, ECF No. 61-2.) Defendants also present copies of checks, which bear the New Hudson Family Restaurant Inc. address, from May 2016 through July 2017, the duration of Plaintiff's employment, for $1,100 and aver that these checks represent the rental cost of the apartment. (*Id.* ¶ 4, Ex. C, ECF No. 61-3.) Multiplying this amount by twelve shows that the total annual rent was $13,200[10] and dividing this figure by three establishes that the annual rent per person was $4,400. That amount divided by fifty-two indicates that weekly rent per person was $84.62. Finally, Defendants provide the Court with two copies of utility bills. (*Id.* ¶ 5, Ex. D, ECF No. 61-4.) The first is for $445.71 for the billing period from December 4, 2015 through February 5, 2016. The second is for $116.93 for the billing period from March 9, 2017 through April 5, 2017. However, the Court declines to consider utility expenses for the purposes of this motion because one of the two bills appears to be entirely outside of Plaintiff's time in the apartment and because it cannot determine the total utility cost over Plaintiff's residency from the March 2017 utility bill alone. Accordingly, Plaintiff's total wages per week were $ 546.16 which amounts to $13.65 per hour.[11] This amount exceeds the $290 minimum weekly wage

---

[10] In Defendants' brief, they state that the annual rent was $12,000. (Defs.' Mot. to Dismiss p. 4.) However, the Court notes that the monthly rent of $1,100 multiplied over twelve months is in fact $13,200.

[11] This figure includes $461.54 Plaintiff received per week and the $ 84.62 weekly value of his lodging.

13

under the FLSA. As the Court has determined that it does not have subject matter over Plaintiff's FLSA minimum wage claim, it will not conduct a Rule 12(b)(6) analysis.

## II. Conditional certification

### A. Modest factual showing of similarly situated employees

Plaintiff has met his minimal burden and made a modest factual showing that he, the opt-in plaintiffs Mario Alberto Angel Leal and Alberto Sandoval Popoca, and the collective action members were not compensated for overtime work in violation of the FLSA. Declarations may be enough to show that a defendant had a common policy or plan that resulted in a plaintiff and those similarly situated being deprived of overtime pay. In *Chime v. Peak Security Plus, Inc.*, the plaintiff submitted two declarations in support of his motion for conditional certification under the FLSA on an overtime claim. 137 F. Supp. 3d 183, 201 (E.D.N.Y. 2015). The court found that the declarations established a common policy in connection with the defendant's alleged failure to pay overtime because, while the declarants did not specifically allege a formal policy in violation of the FLSA, they alleged that the defendant required the plaintiff and other employees to work beyond their scheduled shifts and did not compensate them for that time. *Id.*

Here, Plaintiff and the opt-in plaintiffs each provide declarations indicating that they worked for Defendant in similar positions (Plaintiff Marcial and opt-in plaintiff Angel as food preparers and opt-in plaintiff Sandoval as a dishwasher), regularly worked over forty hours per week, and knew that other employees of Defendants had schedules like their own that resulted in overtime work. (Decl. of David Stein ("Stein Decl.") ¶ 3, Ex. A ("Marcial Decl.") ¶¶ 7, 8 – 10, 19, ECF No. 57-1); (Stein Decl. ¶ 4, Ex. B ("Angel Decl.") ¶¶ 8 – 11, 16, 21, ECF No. 57-2); (Stein Decl. ¶ 5, Ex. C ("Sandoval Decl.") ¶¶ 7 – 10, 17, 22, ECF No. 57-3.) Similar to the declarations in *Chime*, the three declarations meet the modest factual showing that Defendants

14

had a policy that resulted in Plaintiff and those similarly situated not receiving their due overtime pay. These declarations are sufficient for conditional certification. *See Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12-CV-265(PAE), 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012); *Rosario v. Valentine Ave. Disc. Store, Co., Inc.*, 828 F. Supp. 2d 508, 515 (E.D.N.Y. 2011); *Fang v. Zhuang*, No. 10-CV-1290(RRM)(JMA), 2010 WL 5261197, at *3 (E.D.N.Y. Dec. 1, 2010).

However, Plaintiffs cannot show that they are entitled to conditional certification for their FLSA minimum wage claim because, for the reasons discussed *surpa*, Plaintiff was paid above the federal minimum wage[12] and therefore do not have an injury creating standing to bring an FLSA minimum wage claim.[13] Plaintiffs without standing to bring a FLSA minimum wage claim cannot be considered to be similarly situated to potential class members who were paid below the minimum wage and cannot move for certification on that claim. *Compare Hamoudeh v. UnitedHealth Grp. Inc.*, No. 16-CV-790(PKC)(RML), 2016 WL 2894870, at *1 (E.D.N.Y. May 17, 2016) (holding that the plaintiffs were not entitled to certification of a collective action under the FLSA because the court had not yet determined whether the named plaintiffs had standing and noting that "[p]laintiffs may only move for certification on behalf of similarly situated parties if they have standing to bring this lawsuit"), *with Indergit v. Rite Aid Corp.*, No. 08-CV-9361(PGG), 2009 WL 1269250, at *1 (S.D.N.Y. May 4, 2009) (holding that the named

---

[12] The Court, in *supra* Part I(A), establishes that Plaintiff Marcial was paid above the FLSA minimum wage of $7.25 per hour. Plaintiffs Angel and Sandoval were also paid above that minimum wage. Plaintiff Angel was paid more than Plaintiff Marcial, earning $2,150 per month which was $496.15 per week or $12.40 per hour. (Angel Decl. ¶ 15.) Plaintiff Sandoval also earned more than Plaintiff Marcial, $2,100 per month which amounted to $484.62 per week or $12.12 per hour. (Sandoval Decl. ¶ 14.)

[13] Plaintiffs again, in their reply, assert that the rate of pay for minimum wage purposes should be calculated by dividing the weekly salary by the total hours worked and they argue that this calculation is called for by 29 C.F.R. § 778.109. However, Plaintiffs do not account for the rebuttable presumption that a weekly salary covers a forty-hour workweek. *See* discussion *supra* notes 4 & 5.

15

plaintiff had standing to bring an FLSA collective action because "he ha[d] individual standing—i.e, he has alleged that he was personally injured").

### B. Notice to be provided to collective action members

Notice should be sent to the potential opt-in plaintiffs. Although there is no specific guidance on the form that court authorized notices should take, courts should consider the "overarching policies" of collective suits and should ensure that the putative plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)) (internal quotation marks omitted); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003).

Here, Plaintiff submitted a notice to be sent to potential class members and a proposed opt-in form. (Stein Decl. ¶¶ 6 – 7, Exs. D & E, ECF Nos. 57-4 & 57-5.) The notice provides notice of the pending action and notifies potential plaintiffs of their opportunity to opt-in. It also provides instructions on how to join the lawsuit and describes the potential consequences of participation. In their motion, Plaintiffs propose that the notice be mailed by first class mail to the potential collective action members and that the notice be posted at Defendants' restaurant. (Mem. of Law of Pl. in Supp. of Pl.'s Mot. to Conditionally Certify a FLSA Collective Action & Authorize Notice to be Issued to All Persons Similarly Situated p. 11, ECF No. 56.) Plaintiffs further request that the Court order Defendants to provide Plaintiffs with the names and addresses of the potential collective action members. (*Id.* at 12.) Defendant does not object to Plaintiff's notice.

Because the Court determines that Plaintiff's proposed notice would provide accurate and timely notice to allow individuals to make informed decisions about whether to participate, *see Fasanelli*, 516 F. Supp. 2d at 323, the Court accepts Plaintiff's proposed notice as modified to omit any language relating to a FLSA minimum wage claim. Potential collective action members interested in participating must submit their consents to counsel within sixty days of mailing, or sixty days of posting for those individuals notified by the posting at Defendants' restaurant. Defendants are ordered to, within thirty days of this Opinion, provide Plaintiffs with a list of the names and addresses of potential collective action members working for Defendants during the three years prior to the date of the filing of this action.[14]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion is GRANTED in part and DENIED in part. Defendants' motion is GRANTED. The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 55 and 59.

Dated: April 29, 2019  
       White Plains, NY

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge

---

[14] There is a three-year statute of limitations for claims alleging willful violations of the FLSA's overtime protections. *Glass v. A.K. Allen Co., Inc.*, No. 10-CV-804(ADS)(ETB), 2010 WL 11632764, at *2 (E.D.N.Y. Oct. 21, 2010). Courts often set a notice period for three years before the filing of the complaint in FLSA cases. *Mongiove v. Nate's Corp.*, No. 15-CV-1024(NGG)(RML), 2016 WL 590460, at *6 (E.D.N.Y. Feb. 11, 2016) (determining that the notice period should be three years to match the longest statute of limitations period under the FLSA).